UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HECTOR T.,

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:21-cv-00694-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by an Administrative Law Judge on January 15, 2021, following a remand from this Court, denied Plaintiff's application for supplemental security income.  Plaintiff has now moved for judgment on the pleadings (Doc. 7), and the Commissioner has filed a similar motion (Doc. 10).  For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the Defendant.

### I.  BACKGROUND

    Plaintiff filed his application for benefits on February 12, 2015, alleging that he became disabled on June 1, 2008. After initial administrative denials of that claim, a hearing was held before an Administrative Law Judge on June 12, 2017.  That ALJ denied the claim, and, following the denial of review by the Appeals Council, the matter was appealed to this Court, following which the parties stipulated to a remand for further administrative proceedings.  After the Appeals Council remanded the case, a hearing was held by a different ALJ on January 13, 2021.  Both Plaintiff and a vocational expert, Jennifer Stone, testified at the hearing.

    The Administrative Law Judge issued an unfavorable decision on February 2, 2021.  He first found that Plaintiff had not engaged in substantial gainful activity since his application date. Next, he concluded that Plaintiff suffered from severe impairments including schizoaffective disorder, anxiety disorder, and depressive disorder.  However, the ALJ determined that these impairments, taken singly or in combination, did not meet the criteria for disability under the Listing of Impairments.

    Moving forward with the sequential evaluation process, the ALJ then concluded that Plaintiff had the ability to perform work at all exertional levels, but with the following nonexertional restrictions.  He could do simple, unskilled work of a routine and repetitive nature,

could rarely interact with the public, could frequently interact with others in the workplace, and could occasionally be exposed to respiratory irritants. After making this determination, the ALJ concluded that Plaintiff had no past relevant work but could perform jobs like laundry worker, dishwasher, and counter supply worker. He also determined that these jobs existed in significant numbers in the national economy. As a result, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff, in his motion for judgment on the pleadings, raises a single issue, stated as follows:

> The Administrative Law Judge (ALJ) erred assessing Plaintiff's subjective complaints. Without this error, he would have found Plaintiff's complaints credible, and would have accounted for them in the residual functional capacity (RFC). This error left the RFC not supported by substantial evidence.

Plaintiff's Memorandum, Doc. 7-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 51years old at the time of the first administrative hearing, first testified that he lived in an apartment by himself and sometimes needed to use a cane to help him climb three flights of steps up to that apartment. He said he had back issues. He also testified to having left school after the tenth grade and that he was in special education classes. Plaintiff had not worked since 2008; before that, he had done factory labor, a job which allowed him to alternate between sitting and standing.

Next, Plaintiff testified that he had short-term memory problems and that he had been diagnosed with schizophrenia with auditory hallucinations. He experienced those on a daily basis despite taking medication. He also suffered from paranoia which sometimes prevented him from leaving his home. Plaintiff said that he had anxiety and panic attacks as well and had attempted suicide. Being around people made his symptoms worse. Additional problems included sleeplessness and nightmares.

From a physical standpoint, Plaintiff said that because of his back he had to alternate between sitting and standing and that he could not walk more than two blocks even when using a cane. He could not bend down, crouch, stoop, or lift more than a gallon of milk. He also had difficulty remembering instructions and remembering to take his medicine. Plaintiff testified that he participated in mental health counseling on a weekly basis and saw a psychiatrist once a month. On a daily basis, he mostly watched television, and he had help with household chores.

At the second administrative hearing, Plaintiff said he was still experiencing panic attacks and was unable to go outside. He still went to counseling, although it was done on the

phone due to the pandemic. He could not work due to depression and anxiety and was still hearing voices, although medication was helping with that problem. Additionally, Plaintiff testified to back pain and high blood pressure, and said that his son was doing the cooking for him and otherwise caring for him on a daily basis. He also was suffering from psoriasis which could be triggered by stress.

The vocational expert, Ms. Stone, was asked a hypothetical question about a person with Plaintiff's education and work background who had no exertional limitations but who could only do simple, repetitive work with next to no interaction with the public and who could only occasionally be exposed to respiratory irritants. She testified that such a person could do jobs like laundry worker, dishwasher, and counter-supply worker, and she gave numbers for those jobs as they existed in the national economy. If, however, the person had to work in complete isolation, there would be no jobs available, and the same would be true if the person needed hourly supervision. In these jobs, only one to two absences per month, and being off task only 8 to 10 percent of the time, would be tolerated.

### B.  Treatment Records

The pertinent medical treatment records show the following. The Court's summary will be brief since the issue in this case revolves around the ALJ's evaluation of Plaintiff's subjective complaints rather than his evaluation of the medical evidence.

The treatment notes on which Plaintiff's memorandum focuses include a registered nurse's progress note from April 8, 2015, prepared by Lori Haspett. She stated that Plaintiff's diagnoses at that time were schizoaffective disorder and polysubstance dependence. He also reported mild but manageable depression and denied any thoughts of suicide. He had no health concerns and no medication side effects. Plaintiff's mood was described as euthymic and his affect was calm and bright. He had no memory problems. Three months later, his condition was essentially unchanged. Apart from an incident when he was using alcohol, notes from the balance of 2015 are similar to the initial progress note. Plaintiff was started on an anti-anxiety medication in 2016. His paranoia during this period was described as mild. Later notes indicate that he was having no problems with his daily activities and that he was actively trying to get custody of his children. The notes also did not indicate any major changes in his condition. *See* Tr. 831 *et seq.*

The record also contains a letter written in June, 2015 by Ms. Haspett and by Maryann Antonelli, a licensed social worker. The letter indicates that Plaintiff had been in treatment since a 2013 psychiatric hospitalization and that "when unstable, [Plaintiff] presents as highly paranoid, isolative and agitated." However, he was relatively stable when taking his medications and was able to manage day-to-day tasks. (Tr. 316-17).

### C.  Opinion Evidence

Plaintiff was seen consultatively by Dr. Ransom for an adult psychiatric evaluation on

June 17, 2015.  Plaintiff told her he was on medication for schizophrenia and panic attacks and that the medication controlled his auditory hallucinations and paranoia.  He described a fairly full range of daily activities.  His affect was full and his mood was neutral.  Dr. Ransom noted that Plaintiff's memory, attention, and concentration were all intact.  She concluded that he could follow simple directions, perform simple tasks, maintain a regular schedule, relate adequately to others, and deal with stress appropriately.  (Tr. 303-08).

Multiple treating sources completed disability forms.  Ms. Haspett stated, in a form she filled out in 2017, that Plaintiff had no physical or mental work-related limitations.  (Tr. 1043-44).  The following year, she indicated he had moderate limitations in the areas of maintaining attention and concentration, interacting appropriately with others, and maintaining socially acceptable behavior.  (Tr. 1049-50).  In 2019, she endorsed some additional moderate mental limitations concerning understanding, remembering, and carrying out instructions.  (Tr. 1061-62).  On December 10, 2020, Sharon Cushman, a social worker, indicated that Plaintiff was generally compliant with treatment and his symptoms - including auditory hallucinations, paranoia, suicidal and homicidal thoughts, self-harm, agitation, violence, and substance abuse - were then in remission and his prognosis was guarded with continued treatment and medication compliance.  She rated several work-related abilities as "limited but satisfactory" and said she could not assess others.  (Tr. 1033-37).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted);

    *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same
    standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV.  DISCUSSION

    In his single claim of error, Plaintiff takes issue with the way in which the ALJ evaluated his subjective description of his symptoms.  He correctly notes that there is both a two-step process to be followed in making that evaluation and that there are a myriad of factors that the ALJ is required to consider.  According to Plaintiff, other than commenting that Plaintiff's daily activities were inconsistent with his claim of disability, the ALJ did not consider the relevant factors.  He also asserts that the ALJ both mischaracterized Plaintiff's daily activities as supportive of a finding that he could work and ignored the fact that all of the other factors weighed in favor of a finding of disability.  The Commissioner, in turn, argues that the ALJ appropriately considered Plaintiff's activities of daily living and also took into account the evidence which Plaintiff contends was overlooked, making a proper assessment of Plaintiff's residual functional capacity based on the totality of the evidence.

    The ALJ, after correctly reciting the law governing evaluation of the consistency of a claimant's subjective report of symptoms, engaged in the following analysis.  First, the ALJ stated that

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the evidence does not support the claimant's contentions to the degree alleged. Pursuant to [SSR] 16-3p, and in consideration of the objective medical evidence which can reasonably produce the alleged symptoms, such as pain, the claimant's alleged daily activities are not entirely consistent with the claimant's allegation of disabling physical and mental symptoms and limitations. For example, the claimant reported and testified to the independent ability to engage in personal hygiene, prepare simple meals, engage in some household chores, attend his appointments, visit with friends and family, shop, handle finances, watch television, and care for his dog (HT, Exhibit 3E; Exhibit 6F, p. 3). The above activities of daily living require a measure of physical and mental demands, which are not consistent with the level of limitation the claimant alleges. Accordingly, I find that the claimant's activities of daily living suggest a greater degree of functional capability than claimed.

(Tr. 549-50).  Next, the ALJ engaged in a lengthy analysis of the medical evidence, including the opinion evidence summarized above, and made this finding:

> Dr. Ransom's findings are consistent with mental status examinations performed

> by his own treating providers, which documented the claimant's essentially
> normal findings aside from limited judgment and reporting at times to be slightly
> hearing voice, not command in nature -- he is not responding to internal stimuli, is
> pleasant and cooperative, with normal eye contact, speech and thought
> pattern, intact memory, he is fully oriented, his mood essentially euthymic and
> fair insight (Exhibit 19F, p. 11, 14, 19, 21, 28, 31, 33, 35, 39, 41, 42, 44, 46, 47,
> 51). Accordingly, the nonexertional limitations outlined in the above residual
> functional capacity accommodate the claimant's combined mental impairments
> and resultant limitations in functioning.

(Tr. 552). The ALJ then weighed the opinion evidence, assigning the most weight to Ms. Haspett's and Ms. Cushman's earlier statements that Plaintiff did not have significant mental limitations, and also finding support in Dr. Ransom's evaluation. He concluded that review by stating that

> the totality of the evidence does not support the limitations to the degree alleged
> by the claimant given the grossly normal mental status, musculoskeletal and
> neurological findings upon examination, effectiveness of conservative treatment
> modalities, engagement in a wide-range of activities and routine and
> conservative treatment throughout the record. Therefore, the claimant remains
> capable of residual functional capacity assessed above as the evidence does not
> justify the disabling limitations to preclude all work activity as alleged by the
> claimant.

(Tr. 555).

In his memorandum, Plaintiff cites this Court's decision in *Matejka v. Barnhart*, 386 F.Supp.2d 198 (W.D.N.Y. 2005) for the proposition that the ALJ did not correctly assess the consistency of Plaintiff's subjective report of disabling symptoms with the evidence of record. That decision, in turn, relied in part on *Murphy v. Barnhart*, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003), which states that "[i]n assessing the claimant's credibility, the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony." Both of those decisions criticized the ALJ for simply ignoring substantial portions of the record, including the objective medical evidence supporting the claimant's testimony, but they are generally in line with the proposition, stated often by this Court in case like *Hughes v. Colvin*, 2017 WL 1088259, at *4 (W.D.N.Y. Mar. 23, 2017) that "'[a]n [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.' " *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96–9435 (JSR), 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)) (citations omitted)."

Here, the Court finds that the ALJ complied with the requirement to set forth with

specificity the reasons for his decision.  He evaluated both Plaintiff's activities of daily living - which, contrary to Plaintiff's argument, did not provide the sole basis for finding that Plaintiff was not disabled - and discussed how the subjective testimony compared to the objective evidence medical evidence and to Plaintiff's own statements to his healthcare providers.  The Court has no difficulty in this case determining why the ALJ made his finding, and under those circumstances an ALJ does not commit reversible error simply by failing to mention explicitly all of the factors which may have a bearing on the issue of consistency.  *See, e.g., Cichocki v. Astrue*, 534 Fed.Appx. 71 (2d Cir. Sept. 5, 2013).

Further, the Court agrees with the Commissioner that the reasons relied upon by the ALJ find support in the record.  When that is the case, the Court must give substantial deference to the ALJ's conclusions.  *See, e.g., Wynn v. Comm'r of Soc. Sec.*, 342 F.Supp.3d 340, 350 (W.D.N.Y. 2018).  Plaintiff's argument that there are portions of the record which are supportive of his subjective testimony does not alter the fact that there is also substantial evidence to support the opposite conclusion.  The question in this (and most) social security cases is not whether the evidence can be construed in such a way as to favor the claimant, but whether substantial evidence exists to support the ALJ's ultimate conclusion on issues like the consistency between the record evidence and the claimant's subjective report of symptoms.  *See, e.g, Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("whether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports *the ALJ's decision*.").  Because it does so here, the Court finds that Plaintiff's argument does not support an order of remand.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 7), **GRANTS** the Commissioner's motion (Doc. 10), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

                                                          **/s/ Terence P.  Kemp**
                                                          **United States Magistrate Judge**